**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**CIVIL CASE NO. 3:05cv005**

| | | |
|---|---|---|
| **SHEA HOMES, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **OLD REPUBLIC NATIONAL TITLE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendant's Motion for

Summary Judgment [Doc. 21].

**I.    Introduction**

This is a breach of contract action filed by the Plaintiff Shea Homes,

LLC against the Defendant Old Republic National Title Insurance

Company.  The Plaintiff alleges that the Defendant breached the terms of

the parties' insurance agreement by refusing to reimburse the Plaintiff for

damages incurred due to the existence of undisclosed "waste disposal

areas" on the insured property.[1]

The Plaintiff filed this action in the Superior Court of Mecklenburg County, North Carolina, on December 2, 2004, and the Defendant filed a timely Notice of Removal to this Court pursuant to 28 U.S.C. § 1441(a) on January 6, 2005.  The subject matter jurisdiction of the Court pursuant to 28 U.S.C. § 1332 is not in dispute.

After carefully considering the Defendant's Motion for Summary Judgment and Memorandum filed in support thereof [Docs. 21, 22], the Plaintiff's Response [Doc. 24], the Defendant's Reply [Doc. 25], as well as the entire record in this case, the Court concludes that summary judgment in favor of the Defendant is appropriate as to the Plaintiff's claims. Accordingly, for the reasons set forth herein, the Defendant's Motion for Summary Judgment [Doc. 21] is **GRANTED**.

## II.    Factual Background

As required by Rule 56 of the Federal Rules of Civil Procedure, the Court will recite and consider the relevant facts in the light most favorable to the Plaintiff.

---

[1]The Complaint also asserts claims for unfair and deceptive trade practices and bad faith.  The Plaintiff has filed a voluntary dismissal of these claims with prejudice, and therefore, these claims are no longer at issue.

## A.    The Providence Pointe Property

The Plaintiff purchased 155.9 acres in southern Mecklenburg County and received title to the real property through a North Carolina Special Warranty Deed (the "Deed") recorded on March 10, 2000 in Book 11140, Page 789 of the Mecklenburg County Public Registry (the "Property"). [Complaint at ¶ 6]. The Plaintiff purchased the Property in order to develop a subdivision known as the Providence Pointe Subdivision ("Providence Pointe"). [Id. at ¶ 7].

On March 10, 2000, the Defendant issued to the Plaintiff a title insurance policy, number SV 3337146, in the amount of $9,067,950.00 (the "Policy"). [Id. at ¶¶ 8, 11]. The Policy insured the Property against loss or damage resulting from (1) title vesting other than as provided in the Policy; (2) defects in or liens or encumbrances on the title; (3) unmarketability of title; and (4) lack of right of access to and from the property. Included as an exhibit to the Policy is a copy of the legal description contained in the Deed to the Property.

Prior to purchasing the Property, the Plaintiff obtained a boundary survey (the "Boundary Survey") of the Property from Land Design Surveying, Inc. ("Land Design"). The Boundary Survey, which was

performed by David B. Boyles ("Boyles") on behalf of Land Design, was dated December 10, 1999 and was last revised on March 8, 2000.  [Id. at ¶ 14].  The Boundary Survey plots the metes and bounds description of the Property as set forth in the Deed and as referenced in the Policy.  The Boundary Survey shows a graphical representation of two waste disposal areas on the Property.  [Deposition of David B. Boyles ("Boyles Dep.") at 32].  These waste disposal areas were created prior to the Plaintiff's purchase of the property in order to dispose of debris created by the clearing of the land.  The debris is comprised primarily of organic material, such as stumps, trees, branches, and logs, and therefore will decompose over time, thus rendering the waste areas unsuitable for building. [Affidavit of Michael Shea ("Shea Aff.") at ¶¶ 6, 11].

The Boundary Survey does not provide a metes and bounds location of the waste disposal areas, but instead indicates the waste disposal areas with dashed lines.  The dashed lines indicate that the location was not surveyed by Land Design. [Boyles Dep. at 30].  In identifying the waste disposal areas, the Boundary Survey makes reference to a prior survey entitled "Location Survey of Waste Disposal Areas" (the "Location Survey"),

recorded in Map Book 20, Page 262, that was conducted on a portion of the Property on April 29, 1983. [Boyles Dep. at 31].

Boyles testified that he obtained the information about the location of the waste disposal areas from the Location Survey. He testified, however, that he did not personally survey the two waste disposal areas, nor did he attempt to verify the data he obtained from the Location Survey. [Id. at 30-32].

After purchasing the Property, the Plaintiff began developing and constructing residences on the Property as a general contractor. [Complaint at ¶18]. Beginning in the Spring of 2003, the Plaintiff learned that several of the lots on which it had built homes contained bury pits and "stump holes" where organic matter had been disposed of. The Plaintiff discovered that some of these disposal areas were not in the area identified as "waste disposal areas" on the Boundary Survey. [Shea Aff. at ¶10].[2]

Remediation of a waste disposal area requires the removal of the organic material beneath the building pad and the replacement of such

_____

[2]Some of the affected houses, specifically those built on Lots 99-102, were built in the areas designated as waste disposal areas on the Boundary Survey. The Plaintiff does not seek to recover the costs incurred in remediating these lots or repairing these homes. [Affidavit of Jon Steele ("Steele Aff.") at ¶6].

material with suitable fill material. [Shea Aff. at ¶11]. The Plaintiff was required to remediate waste disposal areas on Lots 97, 98, 103-05, 120-22, 152-56, and 158. [Id., Ex. A]. In some instances, remediation proved to be cost-prohibitive, and the Plaintiff instead bought back the homes built over the waste disposal areas in order to tear the structures down and rebuild them. [Id. at ¶13].

By letters dated February 3, 2004 and September 29, 2004, the Plaintiff provided written notice to the Defendant of a claim under the Policy for the expenses incurred in repairing the portions of the Property adversely impacted by waste disposal areas not disclosed on the Boundary Survey. [Complaint, Exs. 2, 4]. The Defendant denied that the Policy covered such losses and therefore denied the Plaintiff's claim by letters dated February 23, 2004 and October 26, 2004. [Id., Exs. 3, 5]. Subsequently, the Plaintiff commenced this action on December 2, 2004. [Id.].

**B.    The Policy**

The general coverage provisions of the Policy state, in pertinent part, as follows:

OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, a Minnesota corporation, herein called the Company, insures, as

of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1.  Title to the estate or interest described in Schedule A being vested other than as stated therein;

2.  Any defect or lien or encumbrance on the title;

3.  Unmarketability of the title;

4.  Lack of a right of access to and from the land.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title, as insured, but only to the extent provided in the Conditions and Stipulations.

[Complaint, Ex. 1 at 1].

Schedule A of the Policy sets forth the name of the insured, the encumbrances on the Property, and the description of the "insured land." For the description of the "insured land," Schedule A refers to Exhibit A and Exhibit A-1 attached thereto. Exhibit A, which is entitled "Legal Description," sets forth a metes and bounds description of the Property and states that the Property contains "155.9 acres, more or less, as shown as 'TRACT 1' on survey entitled 'BOUNDARY SURVEY OF PROVIDENCE POINT[E],' prepared by David B. Boyles, North Carolina Professional Land Surveyor . . . of Land Design Surveying, Inc., dated December 10, 1999, last revised February 28, 2000." [Id., Ex. 1, Schedule A, Ex. A]. Exhibit A-

1 is a metes and bounds description of Tract One and Tract Two of the

Property, neither of which are at issue in this case.

Schedule B lists the exclusions to the Policy, and specifically

excludes coverage for the following:

7.     Sanitary Sewer Easement to Portrait Homes Construction
       Co. recorded in Book 10304, Page 753, Mecklenburg
       County Registry.  The Company insures that the sanitary
       sewer line, field located on the survey, is within the
       easement area and that the easement is located as
       shown on the survey referenced below.  (Exhibit A land.)

                        *     *     *

9.     The following matters that are shown on survey by David
       B. Boyles, December 10, 1999 and last revised March 8,
       2000 entitled "Boundary Survey of Providence Pointe"
       ("the survey"):

       a) Sanitary sewer lines field; b) Approximate
       location of 100 year floodlines, c) **Waste disposal
       area as shown on map recorded in Map Book
       20, Page 62** [sic]; d) 15' access easement as set
       forth in Book 6192, Page 262; e) Approximate
       location of graded road bed not passable, and f) 30
       foot gravel road, field located.  (Exhibit A land.)

10.    Easements to John Wieland Homes of North Carolina,
       Inc. recorded in Book 9664, pages 377 and 381,
       Mecklenburg County Registry.  The Company insures
       that the sanitary sewer line, field located on the survey, is
       within the easement area and that the easement is
       located as shown on the survey referenced above.
       (Exhibit A land.)

[Id., Schedule B at 2] (emphasis added).

Attached to the Policy is a Survey Endorsement, which states as follows:

> The Company hereby assures the insured **that the land is same as that delineated on the plat of survey made by David B. Boyles**, dated December 10, 1999, last revised March 8, 2000, and delineated as : Boundary Survey of Providence Point[e] (Exhibit A land)
>
> The Company here insures said insured against loss or damage which the insured shall sustain in the event that the assurance herein shall prove to be incorrect. . . .
>
> This endorsement is made a part of said policy and is subject to the schedules and the conditions and stipulations therein, except as modified by the provisions hereof.

[Id., Survey Endorsement] (emphasis added).

The Conditions and Stipulations define the term "land" as follows:

> (d)     "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property.  The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

[Id. at 2, Conditions and Stipulations].

## III.    The Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden of establishing that there is no genuine issue of material fact rests with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In considering a motion for summary judgment, the Court must take all of the evidence submitted by the non-moving party as true, and must draw all reasonable inferences in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor.  Id. at 248.  The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law.  Id.

Once the moving party presents evidence sufficient to carry its burden under Rule 56, the non-moving party may not rest upon its

pleadings, but must affirmatively set forth, by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). An entry of summary judgment is mandated if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the evidence, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

## IV. Analysis

"In North Carolina, the interpretation of an insurance policy provision is a question of law." ABT Building Products Corp. v. National Union Fire Ins. Co., 472 F.3d 99, 115 (4th Cir. 2006). As such, "[t]he construction and application of insurance policy provisions to undisputed facts is . . . properly committed to the province of the trial judge for a summary judgment determination." Sitzman v. Government Employees Ins. Co., 641 S.E.2d 838, 840 (N.C. App. 2007) (quoting Certain Underwriters at Lloyd's London v. Hogan, 147 N.C. App. 715, 718, 556 S.E.2d 662, 664 (2001)).

When construing the terms of an insurance policy, the Court "must enforce the policy as written, 'without rewriting the contract or disregarding the express language used.'" <u>Newton v. United States Fire Ins. Co.</u>, 98 N.C. App. 619, 623, 391 S.E.2d 837, 839 (1990), <u>disc. review denied</u>, 327 N.C. 637, 399 S.E.2d 329 (1990) (quoting <u>Fidelity Bankers Life Ins. Co. v. Dortch</u>, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986)). If the policy terms are "plain, unambiguous, and susceptible of only one reasonable construction, the courts will enforce the contract according to its terms." <u>Register v. White</u>, 358 N.C. 691, 695, 599 S.E.2d 549, 553 (2004) (quoting <u>Klein v. Avemco Ins. Co.</u>, 289 N.C. 63, 66, 220 S.E.2d 595, 597 (1975)). If the meaning of the terms is uncertain or capable of more than one reasonable interpretation, "the doubts will be resolved against the insurance company and in favor of the policyholder." <u>Register</u>, 358 N.C. at 695, 599 S.E.2d at 553 (quoting <u>C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co.</u>, 326 N.C. 133, 142, 388 S.E.2d 557, 563 (1990)). "However, ambiguity in the terms of an insurance policy is not established by the mere fact that the plaintiff makes a claim based upon a construction of [the policy's] language which the company asserts is not its meaning."

Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354, 127 S.E.2d 518, 522 (1970).

"When the policy contains a definition of a term used in it, this is the meaning which must be given to that term wherever it appears in the policy, unless the context clearly requires otherwise." Id. Absent a definition, nontechnical terms in the policy should be given their ordinary meaning, unless the context otherwise requires. Id. If a word has more than one ordinary meaning, and the context of the term does not clearly indicate which meaning is intended, the Court should give the term the meaning that is more favorable to the insured. Id. If the immediate context of the term does not clearly indicate the meaning intended, the Court may look to other portions of the policy. Wachovia, 276 N.C. at 355, 172 S.E.2d at 522. Each word in the policy should be given effect, and "all clauses of [the policy] are to be construed, if possible, so as to bring them into harmony." Id.

Insurance provisions "which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction." State Capital Ins. Co. v. Nationwide Mut. Ins. Co., 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986). Conversely, exclusionary clauses "are

not favored and therefore all ambiguous provisions will be construed against the insurer and in favor of the insured."  Id.

The burden is on the insured to show that coverage exists for the claimed loss.  Nationwide Mut. Ins. Co. v. McAbee, 268 N.C. 326, 328, 150 S.E.2d 496, 497 (1966).  "If the insurer relies on a clause of the policy which excludes coverage, the burden is on the insurer to establish the exclusion."  Id.

With these principles in mind, the Court turns to the case at hand. The Plaintiff argues that the Survey Endorsement contained in the Policy covers the losses that the Plaintiff has suffered due to the presence of undisclosed waste disposal areas on the Property.  The Plaintiff further contends that coverage for this loss is not excluded under paragraph 9(c) of Schedule B or any other provision of the Policy.

The Defendant argues, on the other hand, that none of the general coverage provisions of the Policy are applicable to the Plaintiff's loss, and that the Plaintiff's claimed loss is specifically excluded under the Policy pursuant to paragraph 9(c) of Schedule B.

As a preliminary matter, the Court notes that the Defendant has submitted the affidavits of three expert witnesses in support of its motion

for summary judgment, and that the Plaintiff has submitted the affidavit of an expert in support of its response to the Defendant's motion. It is well-established that an expert may not proffer opinions regarding the legal effect of the contract. Smith v. Childs, 112 N.C. App. 672, 681, 437 S.E.2d 500, 506 (1993) (finding trial court erred in allowing expert to testify regarding unambiguous contract provision); cf. Schneider v. Continental Cas. Co., 989 F.2d 728, 731 (4th Cir. 1993) (finding district court erred in considering expert opinions regarding whether exclusion in insurance contract disclaimed coverage; applying Virginia law). In the present case, each of these experts proffers opinions as to whether the Policy provides coverage for the Plaintiff's claims. Because these experts offer solely legal conclusions regarding the effect of the parties' contract, the Court will not consider the opinions of these experts in interpreting the policy language at issue.[3]

The Court begins its analysis by examining the coverage provisions of the Policy. "As with any insurance policy, the policy language itself

---

[3]The Court notes that the affidavits of the "expert witness" attorneys reveal that none of them are admitted to practice before this Court, and that only one of them is licensed in North Carolina. Such "testimony" is nothing more than additional briefs on behalf of the parties, authored by attorneys who may not argue before this Court. Such practice should be, and is, discouraged.

defines the risks transferred to the insurance company.  And risks not explicitly transferred by the policy are borne by the insured."  <u>Haw River Land & Timber Co. v. Lawyers Title Ins. Corp.</u>, 152 F.3d 275, 278 (4th Cir. 1998).

The Policy at issue specifically provides coverage against loss or damage sustained by reason of: (1) "[*t*]*itle* to the estate or interest described in Schedule A being vested other than as stated therein"; (2) "[a]ny defect or lien or encumbrance on the *title*"; (3) "[u]nmarketability of the *title*"; or (4) "[l]ack of a right of *access to and from the land*."  (Emphasis added).  By their plain terms, none of these general coverage provisions afford coverage for a subsurface condition such as an undisclosed waste disposal area.  The existence of undisclosed waste disposal areas is not a result of title of the land being vested other than as stated in the Policy, nor are the waste disposal areas the result of a defect or lien or encumbrance on the title.  Further, the existence of undisclosed waste disposal areas does not render the title unmarketable, nor do the waste disposal areas deprive the Plaintiff of a right of access to and from the land.

These general coverage provisions reflect that the Plaintiff purchased a title insurance policy, not a general liability policy.  "[A]n insurance policy

insuring legal title covers only the right of the owner to assert ownership against others claiming ownership or an interest in that ownership." Haw River, 152 F.3d at 278.  Title to property does not insure that the property itself is "valuable, merchantable, or even usable."  Id.

Notwithstanding the fact that the general coverage provisions of the Policy do not cover the claimed loss, the Plaintiff argues that the loss is nevertheless covered by the Policy under the Survey Endorsement, in which the Defendant assures "that the land is the same as that delineated on the plat of survey made by David B. Boyles, dated December 10, 1999, last revised March 8, 2000, and delineated as: Boundary Survey of Providence Point[e] (Exhibit A land)."  By insuring that the "land" is the "same" as that shown on the Boundary Survey, the Plaintiff argues that the Survey Endorsement thereby insures that all aspects of the "land," including the location of the waste disposal areas, are the same as shown on the Boundary Survey.

The Plaintiff's construction of the Survey Endorsement, however, is not a reasonable interpretation of the plain meaning of its terms.  The Policy specifically defines the term "land" is specifically defined by the Policy as "the land described or referred to in Schedule A, and

improvements affixed thereto which by law constitute real property."  In describing the land, Schedule A, in turn, refers to Exhibit A, which contains a legal description setting forth a metes and bounds description of the Property.  The legal description concludes with the description of the Property as "155.9 acres, more or less, as shown as 'TRACT 1' on [the Boundary Survey]."  The legal description does not include any reference to the waste disposal areas or any other subsurface condition on the Property.  Rather, Exhibit A provides a description of the perimeter of the Property which matches the boundaries as shown on the Boundary Survey.  As such, the Survey Endorsement, which insures that the "land is the same" as that delineated on the Boundary Survey, merely insures that the Property's boundaries are located as shown on the Boundary Survey, and nothing more.

The Court further notes that the Boundary Survey does not purport to provide surveyed boundaries of the waste disposal areas.  Rather, the Boundary Survey marks their approximate location with dashed lines, indicating that the waste disposal areas were not surveyed.  [Boyles Dep. at 30-32].  Accordingly, the Survey Endorsement cannot be reasonably

construed as insuring that the waste disposal areas are "the same" as shown on the Boundary Survey.

Interpreting the Survey Endorsement to insure only the boundaries of the Property is consistent with other provisions of the Policy. For example, paragraphs 7 and 10 of Schedule B contain exclusions and also contain elements of affirmative coverage. After excluding coverage for certain easements shown on the Boundary Survey, both paragraphs 7 and 10 also provide specific coverage that "the sanitary sewer line, field located on the survey, is within the easement area and that the easement is located as shown on the survey." If the Survey Endorsement insured the location of every feature shown on the Boundary Survey, as argued by the Plaintiff, the affirmative coverage set forth in paragraphs 7 and 10 of Schedule B would be redundant and unnecessary. Thus, interpreting the Survey Endorsement as only insuring the Property's boundary lines as shown on the Boundary Survey gives effect to these provisions and promotes a consistent reading of the Policy language.

Additionally, paragraph 9(c) of Schedule B appears to specifically exclude coverage for the waste disposal areas shown on the Location Survey by excluding the "[w]aste disposal area as shown on map recorded

in Map Book 20, Page 62 [sic]."[4]  If the waste disposal areas as shown on

the Location Survey are specifically excluded from coverage, then it follows

that the waste disposal areas as shown on the Boundary Survey (which

references the Location Survey in identifying the waste disposal areas)

would also be excluded from coverage.

The Plaintiff argues that paragraph 9(c) of Schedule B supports its

theory of coverage, because such exception would not be necessary if the

Survey Endorsement applied only to boundary lines on the Survey.

Furthermore, the Plaintiff argues that paragraph 9(c) does not necessarily

exclude coverage for the damages that the Plaintiff seeks, as the Plaintiff is

not seeking damages for the waste disposal areas disclosed on the

Boundary Survey, but rather for the waste disposal areas that were <u>not</u>

disclosed on the Boundary Survey.

The Court does not read paragraph 9(c) of Schedule B to provide

coverage for the Plaintiff's loss.  Notably, this provision does not purport to

insure that the waste disposal areas are located as shown on the Location

Survey, in contrast to the language of paragraphs 7 and 10 of Schedule B,

---

[4]The Court assumes the reference to "Book 20, Page 62" is a typographical error, and that the reference is in fact to "Book 20, Page 262" where the Location Survey is recorded.

which both insure the location of sewer lines on easements. Rather, by its plain language, paragraph 9(c) specifically excludes coverage for the waste disposal areas. Thus, the Court interprets paragraph 9(c) as excluding all coverage for claims related to the waste disposal areas, an interpretation which is consistent with the plain meaning of the Survey Endorsement and the other provisions of the Policy.

When this case is boiled to its essence, the Plaintiff purchased a policy of *title* insurance, which insured that the Plaintiff received legal *title* to certain property. That policy contained a provision insuring the accuracy of the work of a surveyor, who had been retained for the sole purpose of locating the boundary of the property and certain easements. There is no evidence that the surveyor – or anyone else – was retained to locate bury pits, stump holes, or any other subsurface conditions which might render the property unsuitable for the Plaintiff's intended use, and more importantly, there is no evidence that such subsurface conditions were intended to be insured by this title insurance policy. The Plaintiff, however, now argues to this Court that this policy of *title* insurance should be construed to provide coverage for subsurface conditions which the Plaintiff never hired any one to find. As the Court in Haw River noted, a policy

insuring legal title to a property does not insure the property is "valuable, merchantable, or even usable." 152 F.3d at 278. By bringing this suit, the Plaintiff seeks much more than it contracted for – more than it contracted for with the title insurance company, with the surveyor, or as far as is revealed by the evidence, with anyone else.

## V.    Conclusion

The waste disposal areas at issue constitute a physical condition of the property which does not affect the title of the Property. There is nothing in the Policy to support the Plaintiff's contention that the Policy insured the Plaintiff against loss resulting from undisclosed waste disposal areas or any other sub-surface condition. Indeed, it appears that coverage for such conditions is specifically excluded. The Policy at issue is a policy insuring legal title and does not purport to insure for the physical conditions of the property. As such, the Plaintiff's claim for losses or damages incurred as the result of undisclosed waste disposal areas on the Property must be denied.

For these reasons, **IT IS, THEREFORE, ORDERED** that the

Defendant's Motion for Summary Judgment [Doc. 21] is **GRANTED**, and

this case is **DISMISSED**.  Judgment shall issue simultaneously herewith.

**IT IS SO ORDERED**.

Signed: November 5, 2007

Martin Reidinger
United States District Judge